IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| WEST AMERICAN INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) Case No. 07-0566-cv-w-ODS |
| RLI INSURANCE COMPANY, et al., | )<br>)<br>) |
| Defendants. | ) |

**PLAINTIFF WEST AMERICAN'S RESPONSE IN OPPOSITION TO DEFENDANT RLI INSURANCE COMPANY'S MOTION IN LIMINE**

Plaintiff West American Insurance Company ("West American"), for its Response in Opposition in to Defendant RLI Insurance Company's ("RLI") Motion in Limine (the "Motion") states as follows:

### I. INTRODUCTION

The general rule is that evidentiary rulings, especially those addressing broad classes of evidence, should be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in the proper context. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir.1975); *see also Starling v. Union Pac. R.R. Co.*, 203 F.R.D. 468, 482 (D.Kan.2001) ("it is the better practice to wait until trial to rule on objections when admissibility substantially depends upon what facts may be developed there.") (citations omitted). This is because "denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Hawthorne Partners v. AT & T Tech., Inc.*, 831 F.Supp. 1398, 1401 (N.D.Ill.1993).

1

Here, RLI's Motion in Limine continues its theme in this proceeding of trying to avoid any accountability for its actions in misrepresenting the existence of RLI's umbrella policy and failing to investigate or participate in any way in the claim against its insured, Stanley Miller. In doing so, RLI seeks to supply the jury with evidence of only a portion of the claim, resulting in incomplete and misleading facts. But this evidence is relevant on several grounds, most importantly on the issues of bad faith and causation. Compounding the weakness in RLI's motion, many of the requested exclusions lack the required specificity for a proper motion in limine. Accordingly, the Court should deny RLI's Motion, subject to the limited exception identified herein.

## II.  LEGAL ANALYSIS

### A.  RLI's Motion In Limine On Points 1 – 4, 6 And 7: West American's Conduct After September 2004, Notice Issue, RLI's Conduct, Excess Carrier's Duties, ASCK and Garnishment

Evidence should not be excluded in limine unless it is clearly inadmissible on all potential grounds. *Hawthorne Partners*, 813 F.Supp. at 1401. As explained in West American's Brief in Support of its Motion in Limine No. 1 Regarding West American's Investigation of the Existence of the RLI Umbrella Policy and the Responses it Received [Doc. Nos. 231, 232], evidence of West American's actions after September 2004, the notice RLI received, RLI's conduct (including that of its agent, Agency Services Corporation of Kansas ("ASCK") and RLI's conduct during the garnishment proceedings) and RLI's duties as an insurer of Stanley Miller, is all relevant and admissible. Rather than restate those arguments, West American incorporates that brief herein by reference and will limit this response to addressing particularly misguided aspects of RLI's arguments from the Motion.

<u>First and foremost</u>, the 8th Circuit rejected RLI's argument that West American's conduct after September 2004 and RLI's conduct is irrelevant, stating:

> We of course express no view as to whether West was guilty of bad faith or negligent refusal to settle; if so, whether that bad faith or negligence caused the injury of which RLI complains **(which may include the question whether West made a reasonable effort to cure any adverse effects of its refusal to settle); whether RLI failed to mitigate its damages; and other issues that may arise**.

*West American Ins. Co. v. RLI Ins. Co.*, 698 F.3d 1069, 1076 (8th Cir. 2012)(emphasis added). This language is dispositive—West American's effort to protect Miller is relevant and admissible, as is the conduct of RLI. This is the only logical result, as the issues go directly to the causation element of RLI's case; otherwise the jury would receive only a portion of the facts, resulting in confusion and uncertainty. This is also consistent with 10th Circuit precedent on bad faith recognizing it is "necessary to take into consideration…relevant aspects of the third-party plaintiff's conduct, including any responsibility the plaintiff may have for the insurer's lack of adequate information upon which to judge a proposed settlement offer and the reason the plaintiff had for declining to entertain an offer after expiration of a deadline." *Wade v. EMASCO Ins. Co.*, 483 F.3d 657, 670 (10th Cir. 2007). If the conduct of an underlying claimant and the information provided by the claimant must be considered for purposes of a bad faith evaluation, the conduct of RLI in this instance is at least equally important.

<u>Second</u>, RLI cites to *Roberts v. Printup,* 595 F.3d 1181 (10th Cir. 2010), *Smith v. Blackwell*, 791 P.2d 1343 (Kan Ct. App. 1989) and their quotation of *Sloan v. Employers Casualty Ins. Co.*, 521 P.2d 249 (Kan. 1974) to support its argument that West American's post-September 2004 conduct is irrelevant. The quote RLI clings to is: "all the good faith and settlement offers in the world after suit is filed will not immunize a company from the

3
KCP-4309984-4
Case 4:07-cv-00566-ODS   Document 249   Filed 04/01/13   Page 3 of 11

consequences of an unjustified refusal to pay which made the suit necessary." Each of the cited cases is inapposite to the bad faith claim at hand.

*Sloan*, the earliest cited case, took place in the context of a first-party claim seeking attorney's fees as the result of an uninsured motorist claim. 521 P.2d. at 250. In that case, the insurer contended that an offer to pay the insured's first-party claim <u>after</u> the insured filed suit to collect it from the insurer, cut off the insured's claim for attorneys' fees for the cost of filing the suit. *Id.* at 251. The plaintiff argued that, with respect to statutory attorney's fees under K.S.A. § 40-256, the crucial period is before suit is filed. The appellate court agreed, which made sense in that context since it was the earlier refusal to pay that resulted in the suit being filed and by the time the insurer paid the claim, the insured had incurred attorneys' fees. Here, however, RLI did not even have an actionable claim until the alleged conduct resulted in the alleged damage, and that did not occur until the arbitration was completed and judgment was entered. Moreover, despite the quote from *Sloan* cited by RLI, nowhere did *Sloan* state that post-suit efforts to reach a resolution were not <u>relevant</u>, it only held that it ultimately did not insulate the insurer from the attorneys' fees claim. *Sloan* has no application in this setting.

*Roberts* and *Smith*, which cite the *Sloan* decision, hold only that an offer of policy limits that is rejected, after a previous demand to settle for policy limits is withdrawn, does not immunize an insurer from a claim of bad faith. That ruling makes sense in that context, but it has nothing to do with the relevance of evidence of the insurer's conduct leading up to and including its decision to settle the case through a binding arbitration.

If RLI's interpretation of *Sloan, Roberts* and *Smith* was followed, if an insurer denied an initial demand, but then later successfully settled the case and protected the insured, the successful settlement would be irrelevant. That is why when considering a bad faith, the course

4

of conduct up through judgment must be relevant because the insured has no damages, and no cause of action for bad faith, until damages and liability have been established in the underlying case. *See Nussenger v. Bryant*, 153 P.3d 1277, 1280 (Kan. 2007). To hold otherwise and completely ignore what occurs after an insurer's rejection of an initial settlement offer would allow an insured to recover for bad faith even where it ultimately suffered no damages. As the 8th Circuit recognized, such a result is illogical and is not the law in Kansas. *See West American*, 698 F.3d at 1076; *Nussenger*, 153 P.3d at 1287.[1]

Third, with respect to the notice issue, RLI's conduct and that of its agent ASCK, this Court has already stated that RLI's representation, through ASCK, that no umbrella policy existed is relevant to West American's liability, if any, to RLI. In particular, in its opinion regarding claims against ASCK, which was affirmed by the 8th Circuit, this court found that:

> West American would have been entitled to rely on this representation in concluding there was no such policy. Therefore, West American was not required to protect the umbrella policy with the high/low agreement, and West American cannot be liable to RLI for any actions taken in connection with the arbitration.

[Doc. 171, p. 4.] In doing so, this Court recognized that the arbitration agreement, which protected Miller, was critical to the issue of bad faith, and that RLI was entitled to rely on the representation made by RLI in entering into the arbitration. Again, the primary issue for evaluating bad faith is whether West American gave "equal consideration" to Miller's interests. *Bollinger Nuss*, 449 P.2d 502, 510 (Kan. 1969). A jury can only make this determination if it is allowed to hear evidence regarding West American's understanding of what financial interests were at stake.

---

[1] Moreover, as explained above, West American did not unequivocally reject the underlying claimants' demands in 2004. West American proposed the possibility of arbitration, which, again, led to a resolution that fully protected its insured. As such, cases like *Smith* and *Sloan* opining on actions of an insurer after a unilateral rejection of a demand are further distinguishable. West American's conduct, through and including entry into the high-low agreement, was a continuation of ongoing settlement negotiations – not an attempt to cure after the damage was already done.

Finally, many of RLI's arguments are based solely on the fact that the Court dismissed several of West American's affirmative defenses. As explained in West American's Brief in Support of its Motion in Limine No. 1 incorporated herein, the evidence at issue is relevant to elements of RLI's bad faith claim, and, therefore, is admissible regardless of the existence of any affirmative defenses. West American has, however, filed a motion requesting that the Court reconsider the dismissal of those defenses, and, in the event the Court does so, the challenged evidence has additional relevance and RLI's arguments based on the non-existence of these defenses are rendered moot.

B. **RLI's Motion In Limine On Point 5: Attorneys' Fees.**

RLI's cited authority in support of this point stands only for the proposition that the recovery of attorneys' fees under K.S.A. § 40-256 raises issues for the court – not that these issues are required to be bifurcated from the rest of the proceedings. *See Evans v. Provident Life & Accident Ins. Co.*, 249 Kan. 248, 261-62 (1991). Here, depending on the outcome of the underlying litigation, the trial court may be required to make a determination of whether West American refused to pay RLI's demand without "just cause or excuse." Evidence that is relevant to the issue of bad faith, will also be equally relevant to the issues regarding West American's refusal to pay RLI for the amount it expended. Granting RLI's vague motion would necessarily require two complete trials, resulting in unnecessary duplication and waste of judicial resources. Moreover, because RLI only uses broad terms in describing the category and fails to cite to specific factual references[2], it is impossible to fully address this category. Therefore, a ruling on the specific issues should be left to trial.

---

[2] For example, RLI seeks to exclude "evidence relating only to the issue of whether attorney's fees are recoverable by RLI under K.S.A. 40-256." RLI does not identify what these specific facts might be.

6

### C. RLI's Motion in Limine on Point 9

RLI's Motion in Limine on Point 9 seeks a broad ruling regarding: (1) the "locations" of RLI and it attorneys' practices and offices; (2) the size of the law firms representing the parties; (3) the number of attorney representing the parties: (4) the manner in which this lawsuit has been handled by RLI's counsel; (5) and the manner in which RLI's counsel was hired. While West American does not object to category Nos. 2 and 3, a motion in limine regarding the remaining categories is overbroad and improper. First, the physical location of RLI's offices is relevant for the purposes of when and how it received notice of the underlying lawsuit. Second, "the manner in which the lawsuit has been handled by RLI's counsel" is vague and unenforceable, as it by its language it would preclude West American from arguing against a position taken by RLI, through its counsel, both during the lawsuit and at trial. This would defeat the very purpose of litigation. Again, as with many of the issues cited by RLI in its motion, any ruling on the particular issues cited herein should be left to trial.

### D. RLI's Motion In Limine On Point 10

This point seeks a pre-trial ruling regarding <u>any</u> other lawsuit involving RLI, other than the current lawsuit. A motion regarding this issue is premature as other lawsuits involving RLI insureds, including RLI's evaluation of the value of the claim and excess exposure considerations may be relevant for the purposes of impeaching RLI's experts. Moreover, because RLI has criticized West American for not anticipating the results of the arbitration, instances where RLI did not prophesy the end result in a case may also be relevant for the impeachment of RLI personnel. Therefore, a motion in limine addressing this broad issue is improper and should wait for any specific instances at trial.

### E. RLI's Motion in Limine on Points 11, 12, 13, 14

RLI's Motion with respect to witnesses should be denied because it only vaguely describes a broad range of categories and there is no reason to rule on any of these issues until trial. With respect to Point No. 11 on "equally available witnesses", in federal courts the uncalled witness rule allows a fact-finder to draw a negative inference from a party's failure to call a witness only when that witness is "peculiarly within his power." *Cowens v. Siemens-Elema AB*, 837 F.2d 817 (8th Cir. 1988). Here, RLI has not identified or referenced any specific witness, or the level of alleged control of the witness, and this issue should await trial. As to Point No. 12, RLI moves the Court to prohibit West American from calling any witness not "properly designated." Courts are vested with broad powers to preserve the integrity of pretrial scheduling orders. *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277 (8th Cir. 1995). Again, this description is overbroad and should not be ruled upon until presented in the context of the actual trial. Point No. 13 seeks to broadly exclude any mention of any witness who is absent from trial. As with Point No. 11, in some instances the failure to call a particular witness may create an adverse inference. Consequently, it is premature to rule on this topic until trial. Finally, with respect to Point No. 14 regarding experts, again, no specific witness is identified nor is any testimony referenced. Because the Court has the power to enforce its own scheduling orders, and the circumstances and potential remedies could change depending on the context of the situation, the Court should refrain from ruling on this issue until trial.

### F. RLI's Motion In Limine On Points 8, 16, 17, 18, and 20

RLI's Motion with respect to different counsel, open court requests, discovery objections, hearsay, and jury questions should be denied because, like the prior objections, they request exclusion of broad, undefined categories of evidence. Motions in limine are designed to address

8

discrete issues of law and specific areas of evidence or testimony.  *See e.g. Weiss v. La Suisse, Societe D'Assurances Sur La Vie*, 293 F.Supp.2d 397, 407-408 (S.D. N.Y. 2003).  Such motions are not meant to subvert the discretion of the trial court and sweep away broad, undefined categories of evidence.  *See id*.  Overly broad motions in limine present the danger of excluding potentially relevant evidence that the court is never given a chance to consider and, as such, are properly denied where they are too sweeping in scope.  *See id*.  RLI's requests regarding the generic categories identified above are both overly broad and vague.  Without citing to more discrete examples, West American is unable to determine what specific evidence RLI actually seeks to exclude.  Under these circumstances, the Court should deny RLI's Motion and determine the relevance of particular evidence and/or testimony as they are raised at trial.

### G. RLI's Motion In Limine On Points 19 and 21

In Points 19 and 21 RLI seeks to exclude any assertions of any claim or privilege or any privileged information.  Not all communications are privileged and the party asserting the attorney-client privilege has the burden of proving it.  *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985).  Generally, blanket claims of privilege are disfavored; in addition, the privilege can be waived.  *U.S. v. Glass*, 761 F.2d 479, 480 (8th Cir. 1985).  Again, with only broad and incomplete descriptions, a ruling on this point should await the context at trial.

### H. RLI's Motion in Limine on Point 15.

West American does not intend to offer evidence of the court rulings identified in RLI's Motion in Point 15.  Accordingly, West American does not object to the Motion as to this point at this time, but does reserve its right to request that the Court revisit the admissibility of this evidence, if necessary, depending on what occurs at trial.  *See Walzer v. St. Joseph State Hosp.*,

231 F.3d 1108, 1113 (8th Cir. 2000) (evidentiary rulings made by a trial court during motions in limine are preliminary and may change depending on what actually happens at trial).

### III. CONCLUSION

For the reasons set forth herein, West American requests that the Court deny RLI's Motion in Limine, subject to the limited exception identified herein, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted by:

HUSCH BLACKWELL LLP

By: */s/ Bruce A. Moothart*
Bruce A. Moothart, MO #45517
Ryan J. Watson, MO #51233
4801 Main Street, Suite 1000
Kansas City, MO 64112
Main: 816.983.8000
Fax: 816.983.8080
bruce.moothart@huschblackwell.com

Attorneys for West American Insurance Company

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 1st day of April, 2013, by the Court's CM/ECF system to:

Greg K. Winslett
Quilling Selander Cummiskey Lownds PC
2001 Bryan Street
Suite 1800
Dallas, TX 75201
(214) 880-1870
Fax: (214) 871-2111
Email: gwinslett@qsclpc.com

Matthew R Pickelman
Quilling Selander Cummiskey & Lownds
2001 Bryan Street
Suite 1800
Dallas, TX 75201
214-880-1884
Fax: 214-871-2111
Email: mpickelman@qsclpc.com

Vincent F. O'Flaherty
Law Offices of Vincent F. O'Flaherty, LLC
2 Emmanuel Cleaver II Blvd., Suite 445
Kansas City, MO 64112
816-931-4800
Fax:  816-756-2168
Email:  voflaherty@voflaw.com

ATTORNEYS FOR RLI INSURANCE COMPANY

*/s/ Bruce A. Moothart*
An attorney for West American Insurance Company