UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| WEST AMERICAN INSURANCE COMPANY, | ) ) ) |
| Plaintiff-Counter Defendant, | ) ) |
| V. | ) ) CASE NO. 07-0566-CV-W-ODS ) |
| RLI INSURANCE COMPANY, | ) ) ) |
| Defendant-Counter Plaintiff. | ) |

**RLI'S RESPONSE TO PLAINTIFF'S MOTION IN LIMINE NO. 1 REGARDING WEST AMERICAN'S INVESTIGATION OF THE EXISTENCE OF THE RLI UMBRELLA POLICY AND THE RESPONSES IT RECEIVED**

COMES NOW, Defendant-Counter Plaintiff RLI Insurance Company ("RLI") and, files this its Response to Plaintiff's Motion in Limine No. 1 regarding West American's Investigation of the Existence of the RLI Umbrella Policy and the Responses it Received.

I.

As this Court is well aware, RLI sued West American for having refused to settle underlying personal injury claims within its primary policy limits. The evidence is undisputed that West American was given four separate written opportunities to settle within its limits, all of which it rejected long before any questions were ever raised by anyone regarding potential umbrella coverage.

No matter how artfully West American attempts to describe its position in this case, it boils down to this:

1

West American suggests it should somehow be excused from having already breached its contractual obligations in rejecting these offers because it was subsequently misinformed regarding the existence of the RLI umbrella policy. In so doing, West American contends that "it relied" on the proposition there was no umbrella coverage when it subsequently negotiated a high/low arbitration agreement with the underlying claimants. Even assuming that to be true, RLI has repeatedly sought some explanation from West American as to how it claims this result would have been different if it had been told there was an RLI umbrella policy when it initially made this inquiry. To this day, West American cannot offer any evidence or present any testimony to even arguably support the notion that its refusal to settle was somehow caused by RLI's conduct. In fact, when specifically asked what West American would have done differently if it had known of the RLI policy, West American's designated corporate representative, Paul Robbins, succinctly responded: "I have no answer."

Accordingly, as a practical matter, West American continues to focus its defense for failing to settle the underlying claims on subsequent conduct by RLI it has effectively admitted is irrelevant. Giving West American every benefit of the doubt, the most that can be said for its position is that it may have believed the eventual high/low arrangement might allow it to "escape" the consequences of its prior breaches and refusals to settle. Even assuming that to be so, that "belief" standing alone, is totally meaningless and inadmissible.

Very simply, the only way this scenario could have any conceivable relevance is if West American were to <u>also</u> offer evidence that, if it had been told about the RLI policy, it would have proceeded to offer its policy limits and the underlying claimants would have accepted such an offer. Without such a showing, the evidence West American seeks to put forward has no probative value whatsoever. Even worse, as explained in greater depth below, it will be used by

2

West American as a vehicle for seeking relief from the jury based upon a proposition the Eighth Circuit has already held to be fundamentally flawed as a matter of Kansas law.

West American has never offered one shred of evidence or even remotely suggested it would have ever agreed to pay its limits to the underlying claimants. That is certainly not surprising as we know West American flatly rejected four separate written opportunities to settle the underlying claims within limits. Moreover, the evidence is undisputed that West American never evaluated either claim as being worth anything close to its policy limits. Lastly and perhaps most importantly, West American's corporate representative has expressly admitted that he could not articulate a single thing West American would have done differently had it known about the RLI umbrella policy.[1]

As noted above, West American seeks to avoid liability by presenting to the jury a proposition that has already been expressly rejected by the Eighth Circuit. It is evident from all of West American's recent filings that it wants to tell the jury that it could not be guilty of bad faith because it thought it had protected the insured from personal exposure pursuant to the high/low arbitration scenario. West American even goes so far as to mischaracterize the high/low arrangement as a "settlement" as a means of further confusing the jury and misstating reality.[2]

---

[1] Of course, even if knowledge of the RLI policy would have somehow prompted West American to totally reverse its position, do a complete about face, and suddenly offer its policy limits, there is no evidence whatsoever that the underlying claimants would have accepted such an offer. To the contrary, the evidence demonstrates they would not have. Claimant's counsel explicitly advised West American in writing that his fourth and final settlement offers in April of 2004 represented West American's "last chance" to settle within its policy limits. By that point, the claimant's counsel had West American "set up" and, as far as he was concerned, "West American had already busted its limits."

[2] Clearly, the high/low agreement was not a "settlement" as no release of liability was ever provided to Miller. In fact, Miller himself was subsequently sued by the claimants in the garnishment proceeding that occurred after the arbitration concluded.

The Eighth Circuit opinion in *West American Ins. Co. v. RLI*, which is the law of the case in this matter, could not be clearer in its complete rejection of the fundamental premise upon which West American's entire defense is based. The Eighth Circuit explained thusly:

> West argues that the high/low agreement fully protected Miller, its insured, from the results of the arbitration, and therefore neither Miller, nor RLI as subrogee, has a claim against West for more than the policy limits it paid.
>
> . . . .
>
> The core of West's contention is ***fundamentally inconsistent*** with the Supreme **\*1076** Court of Kansas's reasoning in <u>Glenn</u>. That the high/low agreement left Miller with no risk of personal liability should be irrelevant under Kansas law, as the Supreme Court of Kansas has repeatedly held that an action against an insurer whose negligent or bad faith refusal to settle within its policy limits results in an excess judgment against the insured "lies," whether or not the insured has paid or can pay an excess judgment." <u>Glenn, 799 P.2d at 92</u>, quoting <u>Schropp, 567 P.2d at 1369</u> (insured's insolvency does not bar bad faith claim against insurer).
>
> Moreover, it is *sophistry* to posit that West protected Miller from the risk created by West's earlier refusals to settle within its policy limits. Miller *protected himself* against most of that risk by purchasing excess liability insurance from RLI.
>
> . . . . .
>
> Again, the fact that Miller was not personally at risk because he protected himself with excess insurance would not bar RLI as subrogee from asserting this claim.

698 F.3d 1075-76.

In light of this unequivocal pronouncement from the Eighth Circuit, West American simply cannot, as a matter of law, avoid liability for having repeatedly refused to settle by arguing it later protected Miller from personal liability through the subsequent high-low arrangement. RLI respectfully submits that even remotely suggesting that to the jury in this case constitutes reversible error.

Accordingly, that forces West American to argue that the inaccurate information concerning the existence of the RLI policy is relevant because it helps explain why West American subsequently entered into the high/low arbitration scenario. Seizing upon the

4

language from the Eighth Circuit opinion regarding whether West American made reasonable efforts "to cure the adverse effects of its earlier refusals to settle," West American claims that misinformation from RLI's broker led it to <u>believe</u> the eventual high-low agreement might cure the adverse scenario West American had already created.  Consequently, when stripped to its core, West American's position is that it thought it had "cured" the effects of its earlier refusals to settle when, in fact, it subsequently learned there was no cure.  There is simply no Kansas precedent that would even arguably allow West American to avoid the consequences of four prior refusals to settle within limits under such a circumstance.  Accordingly, the evidence West American seeks to introduce is misleading, irrelevant and inadmissible.

As an alternative means for offering to the jury evidence regarding the subsequent confusion regarding the existence of the RLI policy, West American argues that this evidence is necessary to rebut testimony from RLI given in the underlying garnishment proceeding.  In that prior lawsuit, RLI witnesses were asked numerous questions regarding criticisms of West American.  It is certainly true that RLI took issue with West American's decision to arbitrate under a high/low arrangement, <u>as opposed to settling the case within West American's primary limits</u>.  While it is also true RLI would have expressed that opinion if it had been involved in the underlying claims, once again, RLI is not suing West American for having negotiated the high/low agreement or for agreeing to arbitrate.  RLI is suing West American for having refused to settle within limits on four separate occasions before the case ever went to arbitration.  Unless RLI offers evidence to the jury criticizing the high/low agreement (which it will not) or offers evidence to the jury criticizing West American for agreeing to arbitrate (which it will not), the evidence West American seeks to introduce is, once again, irrelevant.  West American cannot

5

effectively "open the door" for RLI by citing deposition testimony RLI gave in a prior proceeding as a means of injecting otherwise improper evidence into this case.[3]

Lastly, West American argues RLI's "refusal to acknowledge coverage" is relevant to RLI's claim for attorney's fees and, therefore, such evidence should be submitted to the jury. First of all, whether attorneys' fees are warranted under KSA 40-256 is to be decided post-verdict by the Court "as the trier of fact," not the jury.[4] Regardless, RLI respectfully submits that its conduct is completely irrelevant to its attorneys' fee claim under KSA 40-256 in any event.

West American's representation that that KSA 40-256 is traditionally applied only "in the context of a dispute between an insured and the insurer" is an accurate statement with respect to "first party" insurance disputes. It is inaccurate, however, when the dispute involves an excess judgment caused by a primary liability carrier's wrongful refusal to settle. In the latter scenario, it is frequently someone other than the insured (*i.e.* a judgment-garnishor or assignee stepping into the shoes of the insured, no different than RLI here) asserting the wrongful refusal to settle claim. Moreover, in such cases, the finding of bad faith refusal to settle by the trier of fact is followed by the trial court's requisite finding of "without just cause" warranting recovery of attorneys' fees under KSA 40-256. As recognized by the Kansas Court of Appeals and affirmed by the Kansas Supreme Court in an "excess judgment" garnishment case: "The bad faith and negligence of [the primary carrier] in the settlement dealings goes hand in hand with its refusal

---

[3] West American also suggests that if RLI had acknowledged its policy earlier, it could have <u>demanded</u> West American settle within limits and could have expressed some disagreement with the decision to arbitrate pursuant to a high-low. Of course, it is axiomatic that an excess carrier has no control whatsoever regarding a primary carrier's settlement decisions or the defense of the underlying claim.

[4] *Smith v. Blackwell*, 14 Kan. App.2d 158, 164-65, 791 P.2d 1343 (1989), *review denied*, 246 Kan. 769 (1990)(it is a question for the district court as the trier of facts to determine whether an insurance company has refused to pay the full amount of an insured's loss "without just cause or excuse"); *see also Evans v. Provident Life & Accident Ins. Co.,* 249 Kan. 248, 261–62, 815 P.2d 550 (1991); *Koch, Administratrix v. Prudential Ins. Co.,* 205 Kan. 561, 564, 470 P.2d 756 (1970).

6

without just cause or excuse to pay the *__full__* amount of the loss."[5] In addition, in the context of a person asserting a wrongful refusal to settle claim against the primary insurer as an assignee of the claim, a federal Kansas court explained thusly:

> A plaintiff holding an assignment of the bad faith claim … may garnish the insurer for an excess judgment. … The right to claim attorney fees, although initially belonging to the insured/defendant/judgment debtor, became the plaintiff/judgment creditor's through garnishment proceedings. *Smith v. Blackwell,* 14 Kan.App.2d 158, 164, 791 P.2d 1343 (1989). Plaintiff may recover attorney fees incurred in the garnishment action … "[the plaintiff], by stepping into the shoes of [the defendant insured], is entitled to reasonable attorney fees *for prosecuting the garnishment action.*" *Id.* at 167, 791 P.2d 1343; *see Coleman v. Holecek,* 542 F.2d 532, 538–39 (10th Cir.1976)(affirming trial court's award of attorney fees for garnishment action); *Watson v. Jones,* 227 Kan. 862, 870–71, 610 P.2d 619 (1980) (discussing attorney fees in the garnishment proceedings); *Farmco, Inc. v. Explosive Specialists, Inc.,* 9 Kan. App. 2d 507, 517–18, 684 P. 2d 436 ( 1984) (fees for garnishment action based upon amount recovered in the garnishment action). This result is consistent with the purposes of the attorney fee statute and the cause of action for bad faith against the insurer. **The court must view the facts and circumstances and test the insurer's deficiencies as if the insured were personally challenging the insurer's handling of the plaintiff's claim and as if the insured were seeking recovery for the fees the insured would have been obligated to pay an attorney for doing so**. *See Smith v. Blackwell,* 14 Kan.App.2d at 165, 791 P.2d 1343. If the insurer's negligent or bad faith handling of the claim resulted in a trial and an excess judgment against the insured, the insured's potential personal liability would be the amount of the excess judgment… If the insured were forced to sue the insurer to recover the excess judgment and the insured prevailed, the insured would be entitled to recover the amount of the excess judgment plus the attorney fees the insured incurred in prosecuting the action against the insurer. [6]

The above-authority notwithstanding, should RLI prevail on its wrongful refusal to settle claim against West American, determining what is relevant to RLI's attorney fee claim can be addressed in the context of RLI's post-verdict motion for attorneys' fees. At this point, such an exercise is premature as Kansas law is very clear that the Court, not jury, makes that determination. Accordingly, the issue of RLI's attorney fee claim is irrelevant to any issue the jury will be asked to decide.

WHEREFORE, PREMISES CONSIDERED, Defendant and Counter-Plaintiff RLI

---

[5] *Smith v. Blackwell*, 14 Kan. App.2d 158, 164, 791 P.2d 1343 (1989) *review denied*, 246 Kan. 769 (1990)(emphasis added).

[6] *Bergeson v. Dilworth*, 875 F.Supp. 733, 738 (D. Kan. 1995)(*emphasis in the original*)

respectfully submits that West American be precluded from offering evidence regarding its communications with RLI concerning the existence of the RLI policy after it had previously refused to settle on four separate occasions.

Respectfully submitted,

*/s/ Greg K. Winslett*
VINCENT F. O'FLAHERTY     MO # 34693
LAW OFFICES OF VINCENT F. O'FLAHERTY, LLC
2 Emmanuel Cleaver II Blvd., Suite 445
Kansas City, Missouri 64112
Telephone: (816) 931-4800
Fax: (816) 756-2168

GREG K. WINSLETT          TX # 21781900
*Admitted Pro Hac Vice*
MATT R. PICKELMAN         TX # 24013328
*Admitted Pro Hac Vice*
QUILLING SELANDER LOWNDS WINSLETT & MOSER
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 871-2100
Fax: (214) 871-2111

**ATTORNEYS FOR RLI INSURANCE CO.**

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the above and foregoing instrument is being served upon all counsel of record electronically in accordance with the Federal Rules of Civil Procedure and in compliance with Local Rule 5.1, on this 1st day of April, 2013.

 */s/ Greg K. Winslett*
 GREG K. WINSLETT

4841-3747-0227, v. 1