IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| WEST AMERICAN INSURANCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-0566-CV-W-ODS |
| | ) | |
| RLI INSURANCE COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND OPINION GRANTING IN PART AND DENYING IN PART MOTIONS TO RECONSIDER

Pending is RLI's Motion to Reconsider Denial of Summary Judgment on West American's Failure to Mitigate Affirmative Defenses (Doc. # 223) and West American Insurance Company's Motion for the Court to reconsider its order granting RLI's Summary Judgment Motion on West American's Affirmative Defenses of Estoppel, waiver, and unclean hands (Doc. # 225). The Court grants summary judgment in RLI's favor on West American's failure to mitigate affirmative defense and reaffirms on other grounds its Order granting summary judgment in RLI's favor on West American's affirmative defenses of estoppel, waiver, and unclean hands.

### I. BACKGROUND

#### A. Factual History

This case involves a dispute between a primary and excess insurer of the same named insured. On September 21, 2011, the insured, Stanley Miller, was involved in an automobile accident with the underlying plaintiffs. At the time of the accident, Miller was insured by West American with a primary automobile liability policy and had an umbrella policy with RLI. The existence of the RLI policy was not established until several years after the accident. West American received four offers to settle from the underlying

plaintiffs on October 16, 2001, January 10, 2003, April 5, 2004, and August 13, 2004. West American rejected each offer.

West American was not aware of Miller's umbrella policy with RLI until he was deposed during the course of the underlying litigation. Miller testified that he believed he had excess insurance coverage with RLI but was unable to locate substantiating documents. In April 2005, West American called RLI, and at its direction, its authorized agent, Agency Services Corporation of Kansas ("ASCK"). ASCK told West American that there was a "gap" in Miller's excess coverage at the time of the accident.

In March 2006, West American and the underlying plaintiffs agreed to arbitrate the claimants' state-court claims pursuant to a high/low agreement providing that the maximum amount the underlying claimants could recover in arbitration would be "all sums of money due and owing under any applicable policies of insurance." After entry of judgments on the arbitrator's awards, West American paid the underlying plaintiffs up to its policy limits. On May 18, 2006, the underlying plaintiffs filed a garnishment action against Miller, West American, and "Unknown Insurance Companies" seeking to collect the unpaid portions of their judgments against Miller. West American defended Miller in the garnishment action.

In July 2006, RLI learned of the proceedings and intervened as a defendant, admitting Miller had an excess policy in force. However, RLI denied coverage claiming that it did not receive timely notice of the underlying claims. During discovery, RLI determined that ASCK received notice of the claims against Miller in April of 2005, prior to the judgments being entered against Miller. Accordingly, RLI paid the excess judgments.

B. Procedural History

West American initiated this lawsuit against RLI and ASCK.[1] West American asserted various claims in connection with excess judgments entered in an underlying personal injury action. RLI counterclaimed against West American for bad faith refusal

---

[1] ASCK has been dismissed on Summary Judgment (Doc. # 171).

to settle, seeking to recover the amount RLI paid to satisfy excess personal injury judgments.

On October 8, 2009, this Court ruled that West American could not be held liable to RLI for bad faith if West American protected its insured's assets with a binding high/low arbitration agreement. Since the question whether the high/low agreement existed was a disputed issue of fact, the Court concluded that summary judgment could not be entered in favor of West American on RLI's counterclaim for bad faith. Doc. # 179.

In the same Order, the Court held that RLI was entitled to summary judgment on West American's affirmative defenses of comparative negligence, estoppel, waiver, and unclean hands. The Court stated:

> Each of these defenses has as its factual predicate RLI's misrepresentation to West American (through RLI's agent) that no excess coverage existed for Miller. West American contends that it relied on this misrepresentation in setting the high of the arbitration agreement at all applicable policies of insurance. The problem with these defenses is that RLI's misrepresentation has no relevance to whether *Miller* could assert a cause of action for bad faith. Since RLI is subrogated to Miller's rights, the misrepresentation has no effect on the viability of RLI's cause of action either.

Doc. # 179, at 4. However, the Court concluded that RLI was not entitled to summary judgment on West American's failure to mitigate affirmative defense. The Court held there was evidence that RLI refused to pay the excess judgments after they were entered against Miller, which allowed interest to accrue. The Court stated:

> If the jury determines West American acted in bad faith, the final question for the jury will be whether RLI failed to mitigate its damages by allowing interest to accrue on the excess judgments. If so, West American will be entitled to a reduction of RLI's damage award.

Doc. # 179, at 5-6.

Then, on December 28, 2009, RLI stipulated to the existence of a binding high/low arbitration agreement "that specified that the 'high' number was all sums of money due and owing under any applicable policies of insurance." Doc. # 181. In light of the stipulation, the Court concluded there was no longer a disputed issue of fact

3

trial and granted judgment in West American's favor on RLI's counterclaim for bad faith. Doc. # 182.

RLI appealed the Court's dismissal of its counterclaim. West American cross appealed, *inter alia*, the dismissal of its affirmative defenses to RLI's counterclaim. The Eighth Circuit reversed the grant of summary judgment dismissing RLI's counterclaim, and declined to rule on the dismissal of West American's defenses to the counterclaim.

RLI has filed a stipulation that it is waiving its right to recover any post-judgment interest it paid on the underlying excess judgments. Doc. # 221. The Court now considers both parties' Motions to Reconsider.

## II. DISCUSSION

Both parties have filed a Motion to Reconsider the Court's October 8, 2009 Order, which (1) denied summary judgment on West American's failure to mitigate affirmative defense; and (2) granted RLI's summary judgment on West American's affirmative defenses of estoppel, waiver, and unclean hands.

### A. Failure to Mitigate

RLI has stipulated that it waives its right to recover any post-judgment interest it paid on the underlying excess judgments. RLI argues, and the Court agrees, that this renders the failure to mitigate issue moot. Nevertheless, West American argues that RLI (1) had multiple opportunities to avoid the excess judgment entirely; and (2) could have negotiated a reduced payment on the judgment, instead of paying the entire excess amount plus interest accrued. In reply, RLI contends that under Kansas Law, there is no affirmative duty for excess insurers to participate in defending the insured and West American can only speculate that RLI could have negotiated a reduced payment on the judgment during the garnishment proceedings.

"It is a general rule of law that one injured by reason of breach of contract by another is under a duty to exercise reasonable care to avoid loss or to mitigate and minimize the resulting damage." *Iseman v. Kansas Gas & Electric Co.*, 567 P.2d 856

4

(Kan. 1977), *overruled on other grounds*, *York v. InTrust Bank, N.A.*, 962 P.2d 405 (1988). "The duty to mitigate damages is not an unlimited one and an injured party is required only to exert reasonable efforts to prevent or minimize his damages within the bounds of common sense." *Steele v. J.I. Case Co.*, 419 P.2d 902 (Kan. 1966). The party asserting the affirmative defense of mitigation of damages has the burden of proving a failure to mitigate losses. *Leavenworth Plaza Assocs., L.P. v. L.A.G. Enterprises*, 16 P.3d 314 (Kan. Ct. App. 2000).

Under Kansas Law, an excess insurer is under no duty to defend the insured. *Ins. Co. of N. Am. v. Med. Protective Co.*, 768 F.2d 315, 321 (10th Cir. 1985) (citing *Am. Fidelity Ins. Co. v. Employers Mutual Casualty Co.*, 593 P.2d 14, 23 (Kan. Ct. App. 1979). In *Medical Protective Co.*, an excess insurer sued a primary insurer alleging that the primary insurer acted negligently and in bad faith in pursuing settlement negotiations. *Id.* at 316. The primary insurer contended that the excess insurer failed to take steps to effect settlement. *Id.* at 320. Despite the primary insurer's contention, the Tenth Circuit held that the action was not barred because under Kansas law an excess insurer is under no duty to defend the insured. *Id.* at 320-21.

In this case, RLI's stipulation that it waives its right to recover any post-judgment interest it paid on the underlying excess judgments renders the mitigation of damages issue moot. West American's argument that RLI had multiple opportunities to avoid the excess judgment entirely is unavailing. Although *Medical Protective Company* does not specifically address the affirmative defense of mitigation of damages, it helps to illustrate that RLI, as the excess insurer, had no duty to defend Miller. Accordingly, West American's argument that RLI had multiple opportunities to avoid the excess judgment fails.

Finally, West American argues that whether RLI could have negotiated a reduced payment on the judgment is another factual issue for consideration. American argues that Mr. Gelbach, attorney for the underlying plaintiffs, "believed the case had settlement possibilities." When asked whether RLI opened up any line of communication regarding settlement, Mr. Gelbach answered:

> You're going to probably remember this better than I, but I remember discussions with you about conversations with Beatty [counsel for RLI]. Beatty kept saying I'm up to the next level, I'm to the next guy, we're trying to evaluate the case,

> which led me to believe there was some hope of getting the case settled, but that never materialized.

Gelbach Deposition, 136:20-25, 137:1-4. However, RLI points out that Gelbach testified there were never any negotiations between him and RLI about settlement of the case and that and he never extended the offer to RLI to settle. Gelbach Deposition, 136:10-19.

The Court concludes that West American has failed to provide any evidence to support the contention that Mr. Gelbach would have accepted something less than the full amount of the final judgment. "[A]llegations are insufficient to defeat [a] properly supported motion for summary judgment; a non-movant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997) (internal quotation marks omitted). The argument that RLI could have negotiated a reduced payment on the judgment is pure speculation. *See Waddell & Reed Financial, Inc. v. Torchmark Corp.*, 223 F.R.D. 566, 626 (D. Kan. 2004) ("A jury cannot award damages based on speculation or conjecture."). Accordingly, the Court grants RLI summary judgment on West American's affirmative defense of failure to mitigate damages.

## B. Estoppel, Waiver, and Unclean Hands

The Court reaffirms on different grounds its Order granting summary judgment to RLI on the affirmative defenses of estoppel, waiver, and unclean hands. These affirmative defenses rely upon (1) RLI's misrepresentation to West American (through ASCK) in April 2005 that no excess coverage existed for Miller; and (2) RLI's denial of coverage in the 2006 garnishment proceeding because it claimed it lacked notice. First, anything that ASCK did or failed to do in April 2005 has no bearing on whether West American's refused to settle in bad faith on four separate occasions, the last of which occurring on August 13, 2004.[2] Second, RLI's statement in 2006 that it lacked notice

---

[2] In the Court's July 1, 2009 Order granting ASCK's amended motion for summary judgment, the Court made a similar ruling. The Court stated:

also has no bearing on whether West American refused to settle in bad faith between 2001 and 2004. The Court reaffirms its Order granting RLI summary judgment on West American's affirmative defenses of estoppel, waiver, and unclean hands.

III. CONCLUSION

A trial must be held to determine whether West American rejected settlement offers in bad faith. The Court reaffirms its Order granting summary judgment in RLI's favor on West American's affirmative defenses of estoppel, waiver, and unclean hands and grants RLI summary judgment as to West American's failure to mitigate affirmative defense.

IT IS SO ORDERED.

DATE: April 2, 2013

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

West American did not contact ASCK until April 22, 2005. Accordingly, ASCK's failures could not have caused West American's bad faith conduct that occurred before ASCK was contacted.

Doc. # 171, at 4-5. Accordingly, the Court granted summary judgment in ASCK's failure on West American's claim of contribution and indemnity for RLI's bad faith.

7